IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| PATRICIA NOZINICH and § | |
| PETER NOZINICH, § | |
| § | |
| Plaintiffs, § | |
| § | |
| vs. § | Case No. 2:09-cv-02105-dkv |
| § | |
| JOHNSON & JOHNSON, INC., § | Jury Demand |
| and CENTOCOR, INC., § | |
| § | |
| Defendants. § | |

_____

**PLAINTIFFS' MOTION FOR SANCTIONS FOR DEFENDANTS' FAILURE TO MEET THEIR DUTIES UNDER FEDERAL RULES OF CIVIL PROCEDURE 30(B)(6) AND 34**
_____

The plaintiffs seek sanctions in the form an Order from this Court awarding the costs for additional depositions of the defendants' corporate designees and compelling the production of information that the plaintiffs have sought, to which the defendants filed objections.  The defendants failed to produce a designee for nine categories of discovery listed in the plaintiffs' Notice of 30(b)(6) Video Deposition Duces Tecum of Centocor Ortho Biotech, Inc.  The defendants also obstructed discovery by designating an employee as their corporate designee for financial information after the plaintiffs had already taken the employee's deposition as a fact witness and as a corporate designee for other types of information.   Finally, the defendants made blanket objections to the plaintiffs' notice, but failed to seek a protective order or court ruling on their objections.  In further support of their motion, the plaintiffs state as follows:

RELEVANT FACTS

This is a products liability case against the makers and manufacturers of a pharmaceutical known as Remicade. Mrs. Nozinich, the plaintiff, took Remicade to treat the symptoms of rheumatoid arthritis. After intravenous doses of Remicade, Mrs. Nozinich developed debilitating and potentially deadly pulmonary emboli.

On January 14, 2011, the plaintiffs sent the defendants a Notice of 30(b)(6) Video Deposition Duces Tecum of Centocor Ortho Biotech, Inc. to formally notify the defendants of their intent to take the deposition of the defendants' corporate representative, pursuant to Rule 30(b)(6).[1] (Exhibit 1- Plaintiffs' Notice of 30(b)(6) Video Deposition Duces Tecum of Centocor Ortho Biotech, Inc.) .   The Notice requested that the defendants identify a corporate designee for five categories or subject matters of testimony.  (Exhibit 1- "Corporate Designee Categories").  The Notice also included a schedule of twenty-six designated matters and documents that the plaintiffs sought to have produced.  (Exhibit 1- "Schedule of Designated Matters and Documents").

LAW AND ARGUMENT

A.  The defendants failed to designate corporate representatives for the items/matters listed in the plaintiffs Rule 30(b)(6) Notice.

The defendants violated their duty to name a corporate designee for each item/matter on the list of twenty-six designated documents/matters on the plaintiffs' Rule 30(b)(6) Notice.  See Fed. R. Civ. P. 37(a)(3)(B) (a party may compel designation of a corporate representative) (Exhibit 2- Defendants' Responses and Objections to Plaintiffs' January 14, 2011 Notice to Take Rule 30(b)(6) Deposition Duces Tecum of

---

[1] The plaintiffs previously sent the defendants a notice which was substantively the same. The parties agreed to reschedule the deposition, and the plaintiffs timely re-sent the notice of deposition, which is attached as Exhibit 1.

Centocor Ortho Biotech, Inc.). Rule 30(b)(6) requires that a corporate party name and, if needed, inform a representative on the relevant matters to represent a corporation in a deposition. Fed. R. Civ. P. 30(b)(6) (stating "The persons designated must testify about the information known or reasonably available to the organization.). Here, the defendants named three designees in response to the Notice, but they only identified corporate designees for 17 out of 26 of the designated matters listed on the Schedule Designated Documents. (See Exhibit 2 Defendants' Responses and Objections to Plaintiffs' January 14, 2011 Notice of 30(b)(6) Video Deposition Duces Tecum of Centocor Ortho Biotech, Inc.)

      The defendants did not identify corporate designees for nine of the designated matters/documents; instead, they either objected to or failed to name a corporate designee for those matters/documents. The defendants had a duty to designate a corporate representative for each designated matter/document. See Rule 30(b)(6). Their objections were not sufficient to relieve them of their duty to designate a corporate representative. See id. The defendants are not the arbitrators of what is discoverable. See id. The Court should require the defendants to designate a corporate representative for all twenty-six items/matters included in the plaintiffs' Notice. As a sanction for failing to designate corporate representatives for each matter/document, the court should order the defendants to pay for the costs of the depositions of the additional designees, including attorney time.

B.    <u>The defendants denied the plaintiffs an opportunity to depose one of their corporate designees on relevant financial matters.</u>

      Additionally, the plaintiffs seek sanctions for the evasive and incomplete disclosures made by the defendants with regard to Notice item number twelve.

<u>See</u> Fed. R. Civ. P. 37(a)(4).  Notice item number twelve sought documents and the designation of a corporate representative who could testify about:

> Remicade sales information, pricing information (including volume discounts). Detailed financial information and reports regarding Remicade, including gross sales, gross/net profits (direct to patient marketing costs, physicians marketing costs, and annual dosage reports. (See Corporate Designee Categories B & E).

The defendants response to Notice item number twelve stated:

> Defendants object to Topic No. 12 on grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the basis that the information sought is confidential business information that is not relevant to the claims asserted in this case. Subject to and without waiving any of the foregoing Objections, ==Centocor will produce the appropriate person(s)== to testify generally regarding Topic No. 12.  **(**Emphasis added).

   The plaintiffs took the depositions of the defendants three corporate representatives including Ms. Teresa Despeaux. The plaintiffs previously took Ms. Despeaux's deposition on June 21, 2010. Ms. Despeaux was the defendants' salesperson to the Rheumatology and Osteoporosis Center ("ROC"), the clinic where Ms. Nozinich received Remicade infusions.  This was not a corporate representative deposition under Rule 30(b)(6).  During this deposition, Ms. Despeaux testified as a fact witness regarding information that she had first hand knowledge of as Centocor's sales representative for the clinic where Ms. Nozinich received Remicade infusions.

   When the plaintiffs took Ms. Despeaux's deposition and the two other corporate designees' depositions, the defendants had not yet identified a person who would testify generally for item number twelve, as they stated in their response.  However, on February 8, 2011, the defendants informed the plaintiffs that they were adopting Ms. Despeaux's June 21, 2010 deposition instead of designating a corporate representative

who could testify regarding the financial information sought in item twelve. The information that Ms. Despeaux testified about during her June 21, 2010 deposition did not include financial information as it relates to the defendants costs, sales, net and gross profits, and marketing of Remicade as a whole. Rather, Ms. Despeaux's deposition was limited to her factual knowledge of the ROC.

Not only did the defendants delay in adopting Ms. Despeaux's prior testimony as fact witness limit the nature and scope of her testimony to her factual knowledge of the ROC, but it also prevented the plaintiffs from inquiring into these matters during her actual corporate representative deposition, taken on January 20, 2011. The defendants' actions constitute an incomplete or evasive disclosure designed to keep relevant information regarding the costs and profits associated with Remicade from the plaintiffs. The financial information that the plaintiffs seek in item twelve with regard to the defendants generally is relevant to the plaintiffs' claim for punitive damages and also to the issues regarding direct to consumer marketing. Because the defendants obstructed the plaintiffs' opportunity to depose Ms. Despeaux regarding this information, the Court should sanction the defendants by requiring that they pay for the costs associated with taking Ms. Despeaux's deposition a third time, including but not limited to attorney's fees.

C. <u>The defendants' response included objections to the plaintiffs' Notice to which the defendants did not seek rulings or a protective order.</u>

Finally, the plaintiffs seek rulings on objections the defendants raised in response to the matters/documents listed on the plaintiffs' Notice. Since corporate depositions may be used as substantive proof during the trial of this case, the defendants did not have the authority to unilaterally withhold documents and/or designations of corporate

representatives. If the defendants wished to raise objections to the information sought by the plaintiffs, they should have noted their objections during the depositions of the corporate representatives so that the Court could rule on the admissibility of the testimony with the benefit of the testimony before it. Instead, the defendants blanket objections obstructed the plaintiffs' right to discovery. Accordingly, the plaintiffs seek an order from the Court on the defendants' objections and the plaintiffs' responses. Should the Court overrule the defendants objections, the plaintiffs seek an extension of the discovery deadline to depose the designated witnesses. If the defendants name the same individual(s) they have previously designated as corporate representatives for the objected to requests, the plaintiffs seek costs, including but not limited to attorneys fees, for re-deposing the same witnesses.

> 13. All Remicade advertising 2000 to 2008 directed at the public, including television, internet, magazine, and/or any other mass media of any kind. (See Corporate Designee Category B)
>
> Response to Topic No. 13:
>
> Defendants object to Topic No. 13 on grounds that it is overly broad, vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the basis that it is impossible to ascertain the information on which Defendants are being requested to testify.
>
> The plaintiffs' request is not overly broad, vague, or unduly burdensome because it is limited to advertising of a specific product, Remicade, over a limited period of time from 2000 to 2008. Additionally, the request is relevant and will lead to the discovery of admissible information. Importantly, there is no requirement that the material sought is actually admissible. Fed. Rule Civ. P. 26(b)(1). In this case, the defendants' efforts to market Remicade to patients and physicians is relevant to the issues concerning direct to consumer marketing and the learned intermediary defense.
>
> 12. Remicade sales information, pricing information (including volume discounts). Detailed financial information and reports regarding Remicade, including gross sales, gross/net profits (direct to patient marketing costs,

physicians marketing costs, and annual dosage reports. (See Corporate Designee Categories B & E)

Response to Topic No. 12:

Defendants object to Topic No. 12 on grounds that it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the basis that the information sought is confidential business information that is not relevant to the claims asserted in this case. Subject to and without waiving any of the foregoing Objections, Centocor will produce the appropriate person(s) to testify generally regarding Topic No. 12.

In response to the defendants' assertion that the request is overly broad, the plaintiff will limit the information sought to the time period from 2000–2008, the relevant time during which the defendants began marketing Remicade until the time that Ms. Nozinich was injured by Remicade. The information the plaintiffs seek in this request shows the amount of money that the defendants were using to market Remicade, the amount of money they invested in Remicade, and the profits that they made from Remicade. Among other things, these facts are relevant to proving that the defendants' actions warrant eliminating the learned intermediary defense because these facts show the efforts that the defendants made in order to influence patients to directly seek prescriptions for Remicade from their medical providers.

5. History of the marketing of Remicade to physicians and the documents related to marketing efforts through in-office infusion clinics. (See Corporate Designee Category D)

Response to Topic No. 5:

Defendants object to this Topic No. 5 on the basis that it is overly broad, unduly burdensome, and vague. Defendants further object on the grounds that it is not limited as to scope and relevant time period and because it is not reasonably calculated to lead to the discovery of admissible evidence.

In response to the defendants' objection, the plaintiffs will limit their request to the time period from 2000 to 2008.  The defendants produced and distributed materials to market Remicade in-office infusion clinics to physicians and physician groups.  Thus, it should not be too burdensome for the defendants to produce these materials to the plaintiffs.  The materials are relevant to the learned intermediary/direct to consumer marketing issues in this case.  The plaintiffs seek information regarding the business model used by the defendants in convincing physicians to open and operate Remicade in-office infusion clinics.  Opening and operating a Remicade infusion clinic requires a physician to  purchase equipment and to sign a contract to purchase the drug Remicade at an agreed upon price based on the volume purchased.  The physician then "sells" the Remicade infusion to medically eligible patients.  Request Number 5 is designed to determine the marketing materials used to convince physicians to set up Remicade in-office infusion clinics.

8. All information related to securing the business by Johnson & Johnson, Inc./Centocor Ortho Biotech, Inc., including paid for travel, training, bonuses, payments, or other promotional perks . (See Corporate Designee Categories B & E)

Response to Topic No. 8:

Defendants object to Topic No. 8 on grounds that it is overly broad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to the basis that it is difficult to comprehend what information is being sought in Topic No. 8 and the term "business" referenced in Topic No. 8 is ambiguous.

The plaintiffs request is reasonably calculated to lead to the discovery of admissible evidence. The plaintiffs seek information regarding the business model used by the defendant in convincing physicians to open and operate Remicade in-office infusion clinics. Opening and operating a Remicade infusion clinic requires a physician to purchase equipment and to sign a contract to obtain the drug Remicade at an agreed upon price based on the volume purchased. The physician then "sells" the Remicade infusion to medically eligible patients. Request Number 8 is designed to determine the type of incentives offered to physicians for setting up Remicade in-office infusion clinics. This request also extends to any incentive the defendant offered to consultants employed for the purpose of ensuring ongoing FDA approval for Remicade. Finally, this request also covers any incentives offered to physicians who enroll patients in Remicade clinical trials. All this information is relevant to the defendants' marketing plan for Remicade.

9. All information and documents regarding attempts by Johnson & Johnson, Inc./Centocor Ortho Biotech, Inc. to control negative publicity regarding dangerous side effects of Remicade. (See Corporate Designee Category B)

Response to Topic No. 10:

Defendants object to Topic No. 10 on grounds that it is overly broad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object on the grounds that it is impossible to comprehend what information is being sought and the term "control" and the phrases "dangerous side effects" and "negative publicity" are undefined and ambiguous. Furthermore, to the extent that Defendants understand this Topic, they are unaware of what "negative publicity" Plaintiffs are referencing and thus have not attempted to control any "negative publicity" regarding Remicade®.

The plaintiffs agree to limit their request to the time period of 2000 to 2008. The plaintiffs seek documents/testimony on the defendants' public relations decisions regarding any studies or reports including but not limited to journal articles that question the effectiveness and/or pricing of Remicade. With regard to the phrase "control," "dangerous side effects," and "negative publicity," these are terms used by the defendants in their office memos regarding the handling of public relations in reference to Remicade.

> 21. Lawsuits involving claims of injuries caused by Remicade. (See Corporate Designee Category A)

Response to Topic No. 21:

Defendants object to Topic No. 21 on grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Indeed, as the Court directed in its August 5, 2010 order (Doc. No. 45), the scope of Plaintiffs' discovery of lawsuits is limited to "thromboembolic events that the Plaintiff experienced." (Doc. No. 45, ¶¶ 32, 38). Accordingly, Defendants should not be required to testify to matters outside the permissible scope of discovery established by the Court, including lawsuits involving claims that Remicade® caused non-thromboembolic injuries. Furthermore, this Topic is intended to harass and annoy Defendants as Plaintiffs are already aware that the Court has limited the scope of discovery in this manner.

The plaintiffs' request was not intended to circumvent the Court's order limiting discovery to thromboembolic events.  The Court's August 5, 2010 Order included an exception to limiting the scope of discovery to thromboembolic events.  The Courts' Order stated "The Plaintiffs may discover expert testimony from other cases, in general, without regard to the nature or subject matter of the expert's testimony in other cases. Defendants are required to provide the Plaintiffs with the experts' testimony from other cases involving Centocor or Johnson & Johnson." (Doc. 45 ¶ 34).  In line with the Court's Order, the plaintiffs' request is designed to elicit a list of cases in which the defendants have been sued so that they may determine the experts the defendants relied upon.  Further, other lawsuits involving Remicade, but not limited to thromboembolic events, are relevant to the plaintiffs' case because they may involve the same defenses or the same direct to consumer marketing and/or learned intermediary issues, regardless of the whether the patient/plaintiff suffered from a thromboembolic event.

> 22. Johnson & Johnson, Inc./Centocor Ortho Biotech, Inc. Drug Safety and Surveillance (DSS) responsibilities, protocols, and procedures generally and related to Remicade specifically. (See Corporate Designee Categories A & C)
>
> Response to Topic No. 22:
>
> Defendants object to Topic No. 22 on grounds that it is overly broad, unduly burdensome and is not limited as to scope and relevant time period. Defendants further object on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence.

In response to the defendants' objections, the plaintiffs agree to limit the relevant time period to 2000 through 2008.  The plaintiffs seek information regarding the manner in which the Drug Safety and Surveillance department (or the department formerly

known as Drug Safety and Surveillance) collects and processes reports of adverse thromboembolic events.  This information is relevant to determine if the defendants are selectively collecting reports of adverse thromboembolic events.

> 23. The policies, procedures, and protocols for determining what adverse event reports will be used and reported to the FDA and used for labeling, warnings, etc. (See Corporate Designee Categories A & C)
>
> Response to Topic No. 23:
>
> Defendants object to Topic No. 23 on grounds that it is overly broad, vague, ambiguous, and seeks information neither relevant nor reasonably calculated to lead the discovery of admissible evidence. Furthermore, Defendants cannot reasonably be expected to designate an individual to testify about what adverse event reports will be used "for labeling, warnings, etc."

The plaintiffs agree to narrow their request for procedures of reporting thromboembolic adverse events to the FDA from 2000 to 2008.  The plaintiff's request is relevant to show that the defendants' selectively report adverse events to the FDA.  How the defendants determine which adverse events are reportable to the FDA is also relevant to the plaintiffs' claim that the defendants under report adverse events in order to avoid FDA warning requirements.  If more than one employee is responsible for making decisions regarding reportable adverse events, then the defendant has a legal duty to designate the person with the most knowledge of this information and to educate that person in any area that their knowledge is incomplete or insufficient.

> 25. Johnson & Johnson, Inc./Centocor Ortho Biotech, Inc. s safety reporting and safety related processing and analysis system, including policies, procedures, and responsible employees. (See Corporate Designee Categories A & C)
>
> Response to Topic No. 25:
>
> Defendants object to Topic No. 25 on grounds that it is overly broad, unduly burdensome, vague, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

>Defendants further object on the basis it is not limited as to scope or relevant time period.

The plaintiffs agree to limit their request for information and/or testimony to the relevant time period of 2000 to 2008. The policy and procedure manuals are relevant to this product liability action because they demonstrate whether or not defendant abided by their own guidelines in handling reports of adverse thromboembolic events for Remicade. Corporate designee SuzanneTravers testified in her depositions that defendants possess a database that contains this information is contained and readily searchable. (Depo. Suzanne Travers pp. 69-70). Ms. Travers also testified that this information is easily searchable. Depo. Suzanne Travers pp. 69-70). Additionally, plaintiffs seek to identify employee(s) responsible for creating the guidelines and enforcing corporate compliance to the guidelines.

>26. The corporate structure and ownership of Johnson & Johnson, Inc. and/or Centocor Ortho Biotech, Inc.
>
>Response to Topic No. 26:
>
>Defendants object to Topic No. 26 on grounds that it is overly broad, vague, and seeks information that is neither relevant nor reasonably calculated to the discovery of admissible evidence. Defendants further object on the basis that it is not limited as to scope or relevant time period.

In response to the defendants' objection, the plaintiffs limit their request for corporate structure and ownership to the time period of 2000 to 2008. The plaintiff's seek documents/testimony on this matter because it is relevant to the plaintiff's claim for punitive damages and to the plaintiffs' claims of liability as far as the structure of corporate decision making is concerned.

Based on the responses provided above, the plaintiffs seek rulings on the defendants objections, and seek to extend the discovery deadline, currently set for

March 7, 2011, so that the plaintiffs may depose the defendants corporate designees on these matters. Also, to the extent that the defendants designate previously deposed corporate representatives for the requests to which they have objected, the plaintiffs seek costs, including but not limited to attorneys fees, for re-deposing the same witnesses.

## CONCLUSION

The Court should grant the plaintiffs' motion for sanctions against the defendants. The defendants failed to meet their duty designate corporate representative for nine of the categories set forth in the plaintiffs' Notice of Video Deposition Duces Tecum of Centocor Ortho Biotech, Inc. In light of the defendants obstructive behavior, the plaintiffs seek to recover costs, including fees for attorney time in taking the defendants' corporate representatives' depositions for previously undesignated matters.

The plaintiffs also seek sanctions in the form of costs, including but not limited to fees for attorney time, associated with re-deposing Ms. Despeaux because the defendants after-the-fact adoption of Ms. Despeaux's fact testimony was not sufficient to address the corporate financial information sought by the plaintiffs in request number twelve.

Finally, the plaintiffs seek rulings on the defendants' blanket objections to the plaintiffs requests for production and corporate designations. If the Court overrules the Plaintiffs' objections the Court should extend the time for taking discovery. Also, if the defendants overruled objections result in the designation of a corporate representative that the plaintiffs have already deposed, the Court should award the plaintiffs costs,

including but not limited to attorneys fees, for re-taking the deposition of the same witness.

Respectfully submitted,

**Hill • Boren, P.C.**

/s/ T. Robert Hill
T. Robert Hill  #08141
Attorney for Plaintiffs
1269 North Highland Avenue
Post Office Box 3539
Jackson, Tennessee 38303-3539
(731) 423-3300

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he is attorney of record for the plaintiff and that he has served a true and correct copy of the foregoing pleading, via electronic filing, through the U.S. District Court's ECF System to:

**Bass, Berry & Sims, PLC**
Clarence A. Wilbon #023378
Nolan M. Johnson #026399
The Tower at Peabody Place
100 Peabody Place, Suite 900
Memphis, TN 38108-3672
(901) 543-5900
*Attorneys for Defendants*
*Johnson & Johnson, Inc. and*
*Centocor Ortho Biotech, Inc.*

On this the   7th   day of   March   , 2011.

/s/ T. Robert Hill
T. ROBERT HILL, ESQ. (BPR #08141)